# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PIPER PETERSON,
JEANIE PETERSON,

        *Plaintiff*,

vs.

MICHAEL MOLDOFSKY,

        *Defendant.*

Case No. 07-2603-EFM

## MEMORANDUM AND ORDER

Between the years of 2004 and 2006, Plaintiff Piper Peterson and Defendant Michael Moldofsky had multiple intimate encounters. During one of these encounters, Moldofsky photographed Peterson while she was engaged in various sexual acts with two other people. Sometime after the photographs were taken, Peterson and Moldofsky had a falling out. Following the falling out, Moldofsky emailed some of the photographs he had taken of Peterson to Peterson's mother, Co-plaintiff Jeanie Peterson, ex-husband, ex-in laws, current boyfriend, boss, and coworkers. As a result of Moldofsky's actions, Peterson and her mother both claim that they have suffered severe emotional distress. This matter is currently before the Court on the following motions: (1) Plaintiffs' Motion for Summary Judgment on Plaintiffs' Counts I, II, IV, and V and on Defendant's counterclaims (Doc. 32); and (2) Defendant's Motion for Summary Judgment on

Plaintiffs' Counts I, II, IV, and V (Doc. 34).[1]  The parties have fully briefed the motions and the Court is now prepared to issue its rulings.

## I. Standard of Review

Summary judgment is an "integral part of the Federal Rules as a whole."[2]  Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4]  A fact is "material" when "it is essential to the proper disposition of the claim."[5]  When making its determination whether to grant summary judgment, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.[7]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

---

[1] In his response to Plaintiffs' motion for summary judgment, Defendant stated that he "has withdrawn all of his counterclaims." Based on Defendant's statement, the Court grants summary judgment in favor of Plaintiffs on these claims. *See Scotwood Indust., Inc. v. Frank Miller & Sons, Inc.*, 435 F. Supp. 2d 1160, 1171 (D. Kan. 2006).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Id.*

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex*, 477 U.S. at 322-23).

[8] *Id.* (citing *Celotex*, 477 U.S. at 325).

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

## II. Analysis

A.  Intentional Infliction of Emotional Distress Claim

Counts I and II of Plaintiffs' complaint allege that Defendant's conduct constitutes the tort of intentional infliction of emotion distress. Both sides have motioned for summary judgment on these claims. In their motion, Plaintiffs, Jeanie and Piper, argue that they are entitled to summary judgment because they have suffered severe emotional distress as a result of Defendant's conduct. In his briefing, Defendant contends that because his act of emailing photographs of Piper "engaged in group sexual activities to a handful of relatives and friends of Piper" was not "sufficiently extreme

---

[9]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11]*Adler*, 144 F.3d at 671. While a district court may search for and consider evidence in the record that would rebut the defendant's evidence, "it is not obligated to" do so. *Mandeville v. Quinstar Corp.*, 2000 WL 1375264, *3 (D. Kan. Aug. 29, 2000).

[12]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

and outrageous" and the alleged distress that Piper and Jeanie have suffered "go far beyond what any reasonable person would expect under the circumstances," the Court should grant summary judgment in his favor. For the reasons that follow, the Court denies both motions.

Desiring to restrict the number of fictitious claims and claims based on trivialities and mere bad manners, "Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage."[14] To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's emotional distress; and (4) plaintiff's mental distress is extreme and severe."[15]

For a plaintiff to survive a motion for summary judgment, the Court must make two threshold determinations: (1) that the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) that the emotional distress suffered by plaintiff is of such extreme degree the law must intervene because no reasonable person should be expected to endure it.[16] "Conduct is not extreme and outrageous unless it is regarded as being 'beyond the bounds of decency and utterly intolerable in a civilized society.'"[17] The classic test for determining

---

[14] *Holdren v. Gen. Motors Corp.*, 31 F. Supp. 2d 1279, 1282 (D. Kan. 1998); *see also Roberts v. Saylor*, 230 Kan. 289, 293, 637 P.2d 1175, 1179 (1981) (discussing the various reasons why courts are reluctant to recognize this type of action).

[15] *Roberts*, 230 Kan. at 293, 673 P.2d at 1179.

[16] *See McGregor v. City of Olathe*, *Kan.*, 158 F. Supp. 2d 1225, 1242 (D. Kan. 2001)(*citing Fusaro v. First Family Mortgage Corp.*, 257 Kan. 794, 805, 897 P.2d 123, 131 (1995)); *Smith v. Welch*, 265 Kan. 868, 876, 967 P.2d 727, 733 (1998).

[17] *White v. Midwest Office Tech., Inc.*, 5 F. Supp. 2d 936, 953 (D. Kan. 1998) (quoting *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205, 1211 (1986)).

whether the relevant conduct is sufficiently extreme is to ask whether "the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'"[18]

Here, the threshold requirements are met. To begin with, the Court finds that an average citizen could characterize Defendant's conduct–emailing photographs of Piper that depict her engaging in group sexual activities to Piper's mother, ex-husband, ex-in laws, current boyfriend, boss, and coworkers–as outrageous.[19] Additionally, the Court concludes that a jury could find that Plaintiffs' emotional distress is sufficiently extreme. Among other things, both Plaintiffs have sought counseling for the alleged stress caused by Defendant's actions, which this Court has viewed "as an indicator of the distress's severity."[20] Furthermore, Defendant's conduct is "so shocking and outrageous as to give rise to an inference of severe emotional distress."[21] Accordingly, the Court denies Defendant's motion for summary judgment on these claims.

---

[18]*Fusaro*, 257 Kan. at 805, 897 P.2d at 130.

[19]*See In re Thomas*, 254 B.R. 879, 885 (D.S.C. 1999) (concluding that the defendant's mailing of sexually explicit pictures of his ex-girlfriend to her new fiancé was "so extreme and outrageous that it exceeded all possible bounds of decency"); *Lucas v. Lucas*, 2008 WL 2696838, at *3 (N.J. Super. Ct. App. Div. July 11, 2008) (declaring, in a case involving a restraining order, that the defendant's act of posting nude pictures of his wife on his car door window where they could be seen by the public was egregious); *McGowan v. O'Rourke,* 918 A.2d 716, 719 (N.J. Super. Ct. App. Div. 2007) ("The act of mailing graphic pornographic pictures to a third-party and implying that they may be sent to the victim's workplace and her son is egregious."); *Del Mastro v. Grimado*, 2005 WL 2002355, at *3 (N.J. Super. Ct. Ch. Div. Aug. 19, 2005) (stating that "the distribution of sexually explicit pictures of [the plaintiff] in Christmas cards to approximately 100 of her family members . . . is sufficiently extreme to constitute outrageous conduct"); *see also Greenhorn v. Marriot Int'l Inc.*, 258 F. Supp. 2d 1249, 1262 (D. Kan. 2003) (finding that the defendant's exposure of himself to plaintiff was extreme and outrageous); *Miller v. Bircham, Inc.*, 874 F. Supp. 337, 341 (D. Kan. 1995) (same).

[20]*Nicol v. Auburn-Washburn USD 437*, 231 F. Supp. 2d 1107, 1119 (D. Kan. 2002).

[21]*Land v. Midwest Office Tech., Inc.*, 114 F. Supp. 2d. 1121, 1145 (D. Kan. 2000) (citing *Taiwo v. Vu*, 249 Kan. 585, 596, 822 P.2d 1024, 1031 (1991)).

As for Plaintiffs' motion for summary judgment, the Court also denies it. Questions relating to intent, causation, and severity of emotional distress are for the jury to decide unless the issue is so clear that reasonable persons could not differ.[22] Here, despite the fact that the evidence supporting Plaintiffs' case is substantial and compelling, the Court concludes that it is not so one-sided that a jury could not find in Defendant's favor. Further militating against the Court granting Plaintiffs' motion is the fact that the Court has not discovered, and Plaintiffs have not pointed to, even one case in this or any other jurisdiction that has granted a plaintiff's motion for summary judgment on an intentional infliction of emotional distress claim. As a result, the Court believes that this claim should be decided by the jury.

B.  Invasion of Privacy Claims

Kansas recognizes the tort of invasion of privacy.[23] "Generally, invasion of privacy is actionable where there is: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public."[24] Here, Plaintiff Piper alleges two different theories of invasion of privacy: intrusion upon her seclusion, Count IV, and publicity of matters concerning her private life, Count V. Both parties have moved for summary judgment on these claims.

---

[22] *See Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980) (intent); *James v. Rowe*, 1989 WL 59044, *3 (D. Kan. May 5, 1989) (causation); *Breeden v. League Services Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978) (severity of emotional distress).

[23] *Ratts v. Bd. of County Commissioners, Harvey County, Kan.*, 141 F. Supp. 2d 1289, 1323 (D. Kan. 2001) (citing *Rinsley v. Frydman*, 221 Kan. 297, 303, 559 P.2d 334, 339 (1977)).

[24] *Finlay v. Finlay*, 18 Kan. App. 2d 479, 485-86, 856 P.2d 183, 189 (1993).

*Intrusion Upon Seclusion*

Plaintiff Piper claims that Defendant intruded on her privacy by emailing photographs of her engaged in group sex to several people. In response, Defendant argues that he is entitled to summary judgment on this claim because no intrusion occurred, as Plaintiff Piper knew of and consented to his presence and his taking of pictures during the sex acts. Because the Court finds that there "is no evidence of an intrusion as based on the manner in which the information is obtained,"[25] it grants Defendant's motion on this claim.

To prevail on an intrusion upon seclusion claim, a plaintiff must establish two elements: "(1) 'an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and' (2) a reasonable person would be highly offended by the intrusion."[26] The essence of this claim "is that an individual's right to be left alone is interfered with by defendant's physical intrusion, or by an intrusion of defendant using his or her sensory facilities."[27]

Although Kansas case law and the Restatement (Second) of Torts § 652B, which Kansas courts usually rely on to define the parameters of a right to privacy action,[28] do not directly address the question presented here, what conduct constitutes an intrusion,[29] there is relevant language that

---

[25]*Haehn v. City of Hoisington*, 702 F. Supp. 1526, 1531 (D. Kan. 1988).

[26]*Robinson v. Bd. of County Commissioners of Rush County, Kan.*, 2007 WL 518829, at *6 (Kan. App. Feb. 16, 2007) (quoting *Werner v. Kliewer*, 238 Kan. 289, 294, 710 P.2d 1250, 1256 (1985)).

[27]*Finlay*, 18 Kan. App. 2d at 486, 856 P.2d at 189.

[28]*Nicholas v. Nicholas*, 227 Kan. 171, 192, 83 P.3d 214, 228-29 (2004); *Dotson v. McLaughlin*, 216 Kan. 201, 208, 531 P.2d 1, 7 (1975).

[29]*See O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (stating that "the Restatement does not define 'intrusion'").

the Court believes indicates how the Kansas Supreme Court would rule on the issue.[30] To begin with, this Court, in a case where it was applying Kansas law, stated that intrusion claims are "based upon the manner in which an individual obtains information."[31] Furthermore, in the case that the Kansas Supreme Court first recognized a cause of action for invasion of privacy by intrusion upon seclusion, the Supreme Court noted that an intrusion claim "does not require publication to be actionable."[32]

In addition to the relevant language, the Court also finds the holdings from our sister jurisdictions instructive. Other courts that have confronted the issue presented in this case have held that publication alone is not enough.[33] The Court is persuaded by the analysis in those cases. Therefore, based on the relevant language in the Kansas case law, the holdings in cases from sister jurisdictions, and its own reading of the Restatement (Second), the Court concludes that under Kansas law the disclosure of properly obtained information does not constitute an intrusion sufficient to make out a claim of invasion of privacy under the theory of intrusion upon seclusion.

---

[30]It is worth noting that both parties failed to provide the Court with cases that would assist it in its effort to ascertain how the Kansas Supreme Court would answer the question presented.

[31]*Ali v. Douglas Cable Communications*, 929 F. Supp. 1362, 1382 (D. Kan. 1996) (quoting *Werner*, 238 Kan. at 294, 710 P.2d at 1256).

[32]*See Froelich v. Adair*, 213 Kan. 357, 360, 516 P.2d 993, 996 (1973).

[33]*See, e.g., Barker v. Manti Tekephone Co.*, 2009 WL 47110, at *3 (D. Utah Jan. 6, 2009) (applying Utah law and declaring that it is the "affirmative physical intrusion, eavesdropping, investigation, examination or prying that constitutes the tort, not any subsequent sharing of the information"); *In re Trans Union Corp., Privacy Litig.*, 326 F. Supp. 2d 893, 901 (N.D. Ill. 2004) (applying Illinois law and stating that "is clear from the Restatement comments [that] it is the intrusion itself that creates liability, not any subsequent publication or disclosure"); *Anderson v. Black*, 2005 WL 2716302, at *4 (W.D. Okla. Oct. 21, 2005) (applying Oklahoma law and opining that "[p]ublication alone is insufficient to constitute an intrusion upon seclusion"); *Hill v. MCI Worldcom Communications, Inc.*, 141 F. Supp. 2d 1205, 1210 (S.D. Iowa 2001) (applying Iowa law and concluding that the "disclosure of properly obtained information does not state a claim for invasion of privacy under the theory of intrusion upon seclusion").

In the present case, Plaintiff does not allege that the photographs that were distributed were taken against her will or were otherwise wrongfully obtained;[34] rather, she merely claims that the *distribution* of the explicit photographs constitutes an intrusion. As stated above, this contention is contrary to Kansas law, as the act of distribution does not constitute an intrusion sufficient to make out a claim invasion of privacy under the theory of intrusion upon seclusion. As a consequence, Plaintiff has failed to establish the first element of this claim and her claim must fail. Accordingly, the Court grants Defendant's motion for summary judgment on this claim and denies Plaintiffs'.

*Publicity of Matters Concerning Her Private Life*

Plaintiff Piper also argues that the distribution of the explicit photographs violated her right to privacy because it publicly disclosed private facts. Defendant contends that he is entitled to summary judgment on this claim because he emailed the pictures to only five people, which he claims is an insufficient number to satisfy the "publicity" requirement of this tort. The Court disagrees with Defendant's contention and for the reasons that follow denies both Plaintiffs and Defendant's motion for summary judgment on this claim.

To succeed on a claim of publicity given to private life, a plaintiff must show that the defendant gave publicity to a matter concerning his private life that is of a kind that "would be highly offensive to a reasonable person" and "is not of legitimate concern to the public."[35] A matter is considered publicized when it is communicated to "the public at large, or to so many persons that

---

[34]*See Simons v. Con-Way Central Express, Inc.*, 2003 WL 22848939, at *3 (D. Minn. Nov. 17, 2003) (applying Minnesota law and ruling that the plaintiff's voluntarily disclosure of information precludes his claim that an intrusion has occurred); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) (same).

[35]*Werner*, 238 Kan. at 295, 710 P.2d at 1256 (quoting the Restatement (Second) of Torts § 652D).

...

the matter must be regarded as substantially certain to become one of public knowledge."[36] Thus, if a plaintiff can put forth proof of either a single communication to the public or a communication that is substantially certain to become known by the public, he will satisfy the publicity requirement of an invasion of privacy claim.

Based on the parties' submissions to the Court, it appears that the only question that must be resolved for this claim is whether the publicity requirement has been met. In their briefing, both of the parties seem to suggest that the Kansas courts have established a numerical threshold for determining whether a communication has been publicized. After reviewing the cases cited, the Court disagrees that such a threshold has been set. In each of these cases, the presiding court merely held that the publicity requirement was not met based on the facts presented; the court did not purport to set forth an exact numerical requirement.

In addition, the Court disagrees with Defendant's contention that *comment a* of the Restatement (Second) of Torts § 652D, which states that "it is not an invasion of the right to privacy . . . to communicate a fact . . . to a single person, or even to a small group of people," controls this issue. The Court is not persuaded that the Kansas Supreme Court would follow comment a in a case involving the transmission of sexually explicit material over the Internet. To begin with, unlike the cases that have quoted *comment a*, this case does not involve a traditional form of communication, such as paper mail[37] or an oral conversation.[38] This distinction is significant because the Internet enables its users to "quickly and inexpensively surmount[]" the barriers to generating publicity that

---

[36]*Werner*, 238 Kan. at 296, 710 P.2d at 1256.

[37]*See, e.g., Werner*, 238 Kan. 289, 710 P.2d 1250.

[38]*See, e.g., Frye v. IBP, Inc.*, 15 F. Supp. 2d 1032 (D. Kan. 1998); *Dominguez v. Davidson*, 266 Kan. 926, 974 P.2d 112 (1999).

were inherent in the traditional forms of communication.[39] Furthermore, the Court finds significant the fact that *comment a* was published at a time when few, if any, contemplated the fact that a single, noncommercial, individual could distribute information, including personal information, "to anyone, anywhere in the world" in just a matter of seconds.[40] Today, unlike 1977, the year that the American Law Institute officially adopted the Restatement (Second),[41] due to the advent of the Internet, "the barriers of creating publicity are slight."[42] Consequently, as is true of the existing Kansas case law, the Restatement offers little to no assistance to the Court in its effort to resolve the present matter.

In diversity cases where the district court lacks guidance on an issue, it "must predict the course that [the state supreme court] would take if confronted with the issue."[43] In making its prediction, the court can look at "the policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts" to ascertain how the state supreme court would act.[44]

In regards to the tort of publicity of private facts, it is well established that the purpose behind recognizing the tort is to protect an individual from the unwarranted distribution of private facts.[45] To ensure that this purpose is not undermined, a growing number of jurisdictions have

---

[39]*Meyerkord v. Zipatoni Co.*, 276 S.W.3d 319, 325 (Mo. Ct. App. 2008).

[40]*Reno v. ACLU*, 521 U.S. 844, 850 (1997); *see also Blumenthal v. Drudge*, 992 F. Supp. 44, 48 (D.D.C. 1998) ("[The Internet] enables people to communicate with one another with unprecedented speed and efficiency and is rapidly revolutionizing how people share and receive information.").

[41]*Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1545 (10th Cir. 1992).

[42]*Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007).

[43]*See Vanover v. Cook*, 260 F.3d 1182, 1186 (10th Cir. 2001).

[44]*Daitcom, Inc. . Pennwalt Corp.*, 741 F.2d 169, 1574-75 (10th Cir. 1984).

[45]*Rawlins v. Hutchinson*, 218 Kan. 295, 304, 543 P.2d 988, 995-96 (1975); *Prosser & Keeton on The Law of Torts* (5th ed. 1984) § 117, p. 858.

adopted flexible standards for determining whether publication has occurred.[46] One standard that has been adopted by many courts throughout the country is the confidential relation standard, a standard that holds that the publication requirement may be met when the defendant discloses private information to people with whom the plaintiff has a special relationship with.[47] The Court finds that this trend of flexibility is instructive on the question of whether a court can find, consistent with the Restatement's dictates, that the distribution of private information to a small group of people can constitute publication.

Cognizant of the purpose behind recognizing the tort of publicity of private facts, the trend in sister jurisdictions, the prevalence of the Internet, and the relative ease in which information can be published over the Internet, the Court concludes that Kansas does not, as a matter of law, preclude a privacy claim simply because the defendant communicated the private fact to a small group of people. Courts must look to the context of the communication–e.g., its medium and content–before makings its determination. With this in mind, the Court turns to the facts of this case.

Here, Defendant emailed sexually explicit material to a handful of Plaintiff Piper's family and friends. While the Court agrees that it is unlikely that Piper's mother will distribute the incriminating photos to the public, the Court cannot, as a matter of law, say that her ex-husband, or any of the other recipients for that matter, will not. With one simple keystroke, a recipient of the

---

[46]*See McSurely v. McClellan*, 753 F.2d 88, 112 (D.C. Cir. 1985) (applying Kentucky law); *Hill*, 141 F. Supp. 2d at 1212 (applying Iowa law).

[47]*See, e.g., McSurely*, 753 F.2d at 112; *Hill*, 141 F. Supp. 2d at 1213; *Chisholm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 940 (N.D. Ill. 1998).

email could, at least theoretically, disclose the pictures to over a billion people.[48]  Therefore, in light of this fact, the Court finds that a genuine issue of fact exists as to whether the contents of the email are substantially certain to become public knowledge.  Accordingly, the Court denies both parties' motion for summary judgment.

C.  Alleged Claim for Attorney Fees Stemming From California Proceeding

In his motion, Defendant contends that he is entitled to partial summary judgment on Plaintiff Piper's claim for attorney fees stemming from the California proceeding.  Plaintiff Piper has not raised a claim seeking compensation for those fees.  Therefore, because no claim has been made, the Court need not issue an order addressing the matter.  As a result, Defendant's motion is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 32) is hereby GRANTED as it relates to Defendant's counterclaims, but DENIED as it relates to Counts I, II, IV, and V of her complaint; Defendant's Motion for Summary Judgment (Doc. 34) is hereby GRANTED as it relates to Count IV, but DENIED as it relates to Counts I, II, V.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[48] *See* Internet World Stats, World Internet Users: June 30, 2009, http://www.internetworldstats.com/stats.htm (last visited Sept. 23, 2009) (estimating that there are over 1.6 billion Internet users).